[*Special Term, January,* 1872.]

## HALLAM AND HALLAM *v.* MAXWELL AND JORDAN.

A., trustee of the estate of L. C. Hopkins in bankruptcy, employed B. to defend, on behalf of the bankrupt estate, a certain case in the Kentucky courts.   In a suit by B. against A. for fees:

*Held,* that A. did not incur a primary personal liability, and that B. must first look to the estate for his fees.

Section 14 of the bankrupt act is as follows:. "No person shall be entitled to maintain an action against an assignee in bankruptcy for anything done by him as such assignee, without previously giving him twenty days' notice of such action, specifying the cause thereof, to the end that such assignee may have an opportunity of tendering amends, should he see fit to do so.

*Held,* that this section is not restricted only to cases in which the assignee has authority to bind the estate, but extends to "anything done by the assignee in the capacity of assignee."

*Held,* also, that a presentation of a bill for services to the assignee is not a sufficient notice under said section.

*Matthews, Ramsey & Matthews,* for plaintiffs.

*Hoadly & Johnson,* for defendants.

WALKER, J.   Suit is brought, in this case, to recover for legal services rendered in representing the trustees of the estate of L. C. Hopkins in bankruptcy, in a certain case in the Kentucky courts.   It is admitted that the defendants had no interest whatever in the matter, except as such trustees, and that the plaintiffs knew that they appeared in the suits only in that capacity, and it appears that when they presented their bill they made it out in the name of the trustees.   This suit is, however, brought against Maxwell & Jordan *personally*, for the services which were rendered in representing the trustees.

There are three defenses set up in the answer:

1. That the employment was to represent the trustees, and that the parties therefore were not liable *personally*.

2. That no notice of the suit had been given to the defendants, in accordance with section 14 of the bankrupt act, under which they were acting.

3. A denial that the services were worth what is charged.

There is no evidence to show that these defendants are liable personally in this case, unless on the broad ground that a trustee in bankruptcy necessarily incurs a personal responsibility in reference to everything that he does in the performance of his trust, no matter how necessary it may be, or whether the estate has funds or not. There is no evidence in the case to show that the trustees have not funds in their hands, nor that the services were not necessary to secure the trust property; on the contrary, the evidence is that they were.

I have been able to find no case in the books holding this broad ground. The cases referred to by counsel for plaintiff do not reach it.

The case of *Raw* v. *Cutten*, 9 Bing. 102, also reported in 2 Moore & S. 123, simply holds that an assignee in bankruptcy will not be liable for the loss of money belonging to the trust, through the default of an agent employed by him, unless he has been guilty of negligence in the selection of the agent. On the contrary, the language of the opinion would seem to me to look the other way.

Tindall, C. J., in delivering the opinion of the court, says:

"And, again, in *Ex parte Belchier*, Amb. 218, Lord Hardwicke goes much more fully into the principle, by which the question of the assignee's liability is to be governed. That was a case where the assignee, after employing a broker to sell tobacco, the property of the bankrupt, allowed the money to remain in his hands ten days, when he died insolvent. Lord Hardwicke said: 'If the assignee is chargeable in that case, no man of sense would act as assignee under a commission of bankruptcy. This court has laid down a rule with regard to the transactions of assignees, and more so of trustees, so as not to strike a terror into mankind acting for the benefit of others, and not for their

own. Courts of law and equity, too, are more strict as to executors and administrators; but where trustees act by other hands, either from necessity or conformably to the common usage of mankind, they are not answerable for losses.' In another part of the judgment he adds: 'The assignee in this case acted as prudently for the trust as for himself, and according to the usage of business.'"

And Chief Justice Tindall proceeds, page 103: "Inasmuch, therefore, as the provisional assignee had the power, both from the necessity of the case, and also from the ordinary course of business observed on similar occasions, to execute this part of his duty by means of an agent, and as there is the entire absence of fraud on the part of the defendant, and no proof of negligence in choosing an insufficient or dishonest person as his agent, we hold, upon the authority of the cases above referred to, that he is not to be charged with the money received by Williams, and not paid over to the defendant, in an action for money had and received by him to the use of the plaintiff."

The other case referred to by counsel was *Murch* v. *Clarke*, 10 Bing. 102. In this case the assignee had received money due the estate under a void assignment, and was sued by the bankrupt to recover it. The court held that he would be liable if it was still in his hands, but if he had paid it into bank, as required by the law, he would not be.

These were the only cases to which I was referred by counsel, and they seem to me to be far from supporting their position.

An analogy was suggested by counsel, as well as in the case of *Raw* v. *Cutten*, cited above, between the liability of an assignee and that of executors or administrators, but I have not been able to find a single case imposing so extensive a liability upon executors or administrators.

The strongest authority I can find is a passage in Tiffany and Bullard on Trustees, 583:

"Purchases made by trustees, executors, administrators, or guardians, when made in obedience to the duties of the

trust, impose. upon them personal liability, and the seller must look to them, and they to the trust estate, for reimbursement."

The cases cited to sustain this proposition are but three in number, and do not seem to sustain the position. They are all cases of executors, except *Sanford* v. *Howard*, 29 Ala. 101, which was the case of a guardian. In this case, the order was as follows : "Let the children of Jacob Mayberry, deceased, have any goods they wish, and charge them to the children separately, and *I will pay for them at the end of the year*, or as soon as the cotton crop is sold." This was, as the court say, a clear personal undertaking, and afforded full ground for holding the guardian to a personal liability.

*Harding* y. *Evans*, 3 Port. (Ala.) 221, is a case where the statute required the executor to carry on the farm during the residue of the year in which the intestate died. The suit is for goods purchased, but the court say that it does not appear that the goods were purchased for the support of the plantation during that year.

The case was therefore not made out. It is true, the court go on to say : "But if it did so appear, neither the statute referred to, nor any other principle of law, would relieve the administrator from liability for the articles purchased by him. The statute gives a sufficient indemnity to the administrator in cases of this kind (and which is, perhaps, only the same that he could have claimed under the common law), that all expenses in continuing the plantation may be deducted from the amount of assets which may come into the hands of the administrator."

So in *Lovell* v. *Field*, 5 Vt. 218, where an administrator bought goods for the benefit of the estate, he was held personally liable, but there was nothing to show that it was his duty to buy them. It is singular that no authorities are cited in either of these cases.

These cases, then, when strictly analyzed, do not sustain the doctrine that a trustee is liable personally, when acting

strictly within the line of his duty, and in good faith for the benefit of the trust estate.

In such cases as this, the trustee is liable personally if he does not prosecute or attend to the suit; and to say that he can not procure the necessary services to do so without incurring primary personal liability therefor, seems to me open to the objection stated in *Raw* v. *Cutten*, of discouraging men from taking so dangerous a position.

Moreover, in our State the decisions are more liberal toward executors and administrators than in most others.

In *Howard's Adm'r* v. *Powers*, 6 Ohio, 94, it was held that counts alleging that the administrator became indebted *as administrator*, and promised to pay *as administrator*, could be joined with counts charging indebtedness by the testator.

Wright, J., said, page 94: "If the estate is insolvent, and the administrator has disbursed these assets in due course of administration, can he be made liable as an individual when in that capacity he has done nothing? The rule of law that would so subject an administrator without fault, would be palpably unjust; yet he would be so liable, if the transaction be held his own personal contract. In the case supposed, the money was received by the individual as administrator. As an individual, he had not a shadow of claim to it, and he paid it away again under the direction and sanction of the law, with the superadded obligation of his oath of office. Upon no principle of equity or justice can he be holden as an individual to answer for it."

And in *Andrews' Ex'r* v. *Andrews' Adm'r*, 7 Ohio St. 150, Judge Brinkerhoff, while holding that an executor undertaking to defend the will can not, if unsuccessful, claim his expenses from the estate, says, page 150: "The question presented in this agreed statement depends, it seems to us, upon a further inquiry, to wit: is an executor or administrator, with the will annexed, in duty bound to maintain against the heirs at law a contest as to the validity of the

will which he has undertaken to execute? If he be thus bound, if it be a duty the law casts upon him in the administration of his trust, then it follows that the expenses fairly incurred by him in such contest must be payable out of the trust estate, whatever may be the consequences to the successful contestant. The idea that the law should imperiously thrust the onerous duty upon a trustee, having in general no personal interest in the existence of the trust, and *make him personally responsible for the expenses necessarily incurred in the discharge of his duty, is wholly inadmissible.* Considerations of public policy, sufficient to overbear all incidental private convenience and private interest, would forbid it, for otherwise a prudent man would seldom undertake the office of executor when there was the remotest prospect of a contest of the will, and the statutory right to dispose of property by will would be made, to a great extent, a dead letter for the want of responsible persons willing to assume the risks of its execution."

In the same case, the opinion proceeds throughout on the ground that an executor is bound as a trustee, but that a trustee, *though bound to protect the trust property,* is not bound to protect the instrument creating the trust. It assumes directly that, if he were so bound, he would be entitled to his expenses, though unsuccessful.

I find, too, that, under the strict rules of the common law, the judgment for costs against an executor, where there was no laches or fault, was, *de bonis testatoris, et si non, de bonis propriis,* thus imposing on him only a secondary liability. Tollee on Executors, 363, 366.

It seems to me that the principles to be educed from these cases are, that when a trustee acts *bona fide* in the discharge of a duty imposed upon him by law, he does not incur at least a primary personal liability, but that he does so when he departs from his actual duty and volunteers to do something outside of his duty for the benefit of the estate.

It seems to me that this rule is founded in the same strong reasons of public policy and justice stated in the citations from *Raw* v. *Cutten* and *Andrews' Ex'r* v. *Andrews' Adm'r*, cited above.

Now, it was clearly a part of the duty of these trustees to defend their trust. Had they, having means in their hands at least, failed to do so, they would have become personally liable for their negligence; they therefore are entitled to demand that their employers look to the fund for which their services were employed.

Nor is any hardship imposed upon the other party by such a decision. If he does not choose to rely upon the estate for which he is asked to act, in the first instance, at least, *he* is under no obligation to act at all. He is perfectly free to refuse to do anything, unless secured in some way; and it is no hardship to him to require him to signify his determination openly.

It seems to me, therefore, that, upon principle, this action can not be maintained against these defendants personally, under the facts now shown.

The second ground of defense is based on the following clause of section 14 of the bankrupt act:

"No person shall be entitled to maintain an action against an assignee in bankruptcy for anything done by him as such assignee, without previously giving him twenty days' notice of such action, specifying the cause thereof, to the end that such assignee may have an opportunity of tendering amends, should he see fit to do so."

Under section 43, when the estate is wound up by trustees, as it is in this instance, the act provides that "said trustees shall have all the rights and powers of assignees in bankruptcy."

These clauses requiring a certain notice to be given are quite common in England, and this clause, with many others, was probably borrowed from their bankrupt act.

It was claimed in argument, that this applied only to cases in which the assignee had authority to bind the estate,

but it seems to me that could not have been the intention. As to such matters, the assignee does not need any protection. It is, I think, intended to cover all acts which the assignee honestly does in the discharge of the trust which the law casts upon him. This is the construction which has been put upon it in England. Thus it has been held that a judge of a county court disobeying a prohibition, was entitled to notice of an action. *Booth* v. *Clive*, 20 L. J., C. B. 151; see also *Newton* v. *Ellis*, 5 El. & Bl. 115; *Davis* v. *Curling*, 8 C. B. 287; *Hendrick* v. *Moss*, 7 H. & N. 136.

In some cases a distinction has been taken between actions of tort and actions of contract, and the requirement of notice has been held to apply only to the former. Such cases are *Umphelby* v. *McLean*, 1 B. & Ald. 42; *Atkins* v. *Barnwell*, 3 East, 92. But upon examination, these cases will be found to turn upon the phraseology of the particular act, and it is not understood to be a general rule, as is shown by *Waterhouse* v. *Kean*, 4 B. & C. 200.

The language of this act, too, is broader than that of the English acts. Their general language is that no action shall be brought without notice for " anything done in pursuance of this act." Here it is : that no action shall be maintained " against an assignee in bankruptcy for anything done by him as such assignee."

This is broader than the language of any English act that I have seen.

It seems to me that it is clear that the employment in this case was done *as assignee.* It was the employment of an attorney to represent the bankrupt's estate in a suit concerning property belonging to it, when it was his duty, as assignee, to protect it. I think the assignee was entitled to notice of the suit.

The only notice shown was a presentation of a bill. Under all the English decisions this is not sufficient, and it seems to me to have been the intention of the act to require a specific notice.

I have not found it necessary to go into any discussion of the value of the services rendered, having come to the conclusion, on the other defenses, that judgment must be for the defendants.